IN THE
United States Court of Appeals for the Tenth Circuit

———————————

JACOB ROOT,

Plaintiff/Appellant,

v.

CITY OF COLORADO SPRINGS, a municipality, and
OFFICER ROBERT COMSTOCK, in his individual capacity,

Defendants/Appellees.

———————————

On Appeal from the
United States District Court for the District of Colorado
Civil Action No. 24-cv-01293-DDD-TPO
(Hon. Judge Daniel D. Domenico)

———————————

**APPELLEES' ANSWER BRIEF**

———————————

Brian Stewart, Senior Attorney
Colorado Springs City Attorney's Office
30 South Nevada Avenue, Suite 501
Colorado Springs, Colorado 80903
(719) 385-5909

**ORAL ARGUMENT IS NOT REQUESTED**

# TABLE OF CONTENTS

Page(s)

TABLE OF AUTHORITIES ................................................................... iii

STATEMENT OF PRIOR OR RELATED APPEALS............................................ ix

STATEMENT OF THE ISSUES FOR REVIEW ................................................. 1

STATEMENT OF THE CASE................................................................... 1

SUMMARY OF THE ARGUMENT ............................................................ 4

ARGUMENT .................................................................................... 7

    1. Standard of Review......................................................................... 7

        1.1    Fed. R. Civ. P. 12(b)(6) ......................................................... 7

    2. Officer Officer Comstock Is Entitled To Qualified Immunity ...................... 8

        2.1    The district court correctly held that Officer Comstock's split-
               second decision did not violate the Fourth Amendment ...................... 8

            2.1.1  Mr. Root does not dispute that he was suspected of
                    serious
                    crimes and that he was actively fleeing from police ................. 9

            2.1.2  The district court did not apply a "heightened pleading
                    standard" by finding that Mr. Root's recklessness posed a
                    safety risk to others ................................................10

            2.1.3  The district court correctly declined to evaluate
                    this incident as an act of deadly force ...................................14

            2.1.4  Mr. Root has not alleged facts that plausibly show that
                  tasing him was an act of deadly force ...................................16

        2.2    Officer Comstock did not violate clearly established law .................18

2.2.1 Mr. Root fails to point to a case where an officer used excessive force by deploying a taser in a situation like this one ............................................................................. 20

2.2.2 Mr. Root's dissimilar and unpublished cases do not establish a weight of authority .................................. 20

3. Mr. Root's Opening Brief Fails To Show That The District Court Erred By Dismissing His Claim Against The City .................................. 23

3.1 Mr. Root has not plausibly established an unofficial custom ............. 24

3.2 Mr. Root's unrelated examples also fail to demonstrate that a City policy was the moving force behind his injury ......................... 26

3.3 The district court correctly concluded that Mr. Root failed to state a plausible failure to train claim .................................. 28

3.4 The district court correctly held that Mr. Root failed to plausibly assert a municipal liability claim under a ratification theory ............. 29

CONCLUSION .................................................................. 29

CERTIFICATE OF COMPLIANCE .................................................. 31

CERTIFICATE OF DIGITAL SUBMISSION AND PRIVAC REDACTIONS .. 32

CERTIFICATE OF SERVICE (CM/ECF) .......................................... 33

# TABLE OF AUTHORITIES

Page(s)

**CASES**

*Aldaba v. Pickens*,
  777 F.3d 1148 (10th Cir. 2015).............................................................. 15

*Aldaba v. Pickens*,
  844 F.3d 870 (10th Cir. 2016)........................................................... 16, 19

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ..................................................................... 7, 8, 18

*Bailey v. Twomey*,
  791 F. App'x 724 (10th Cir. 2019) ...................................................... 19, 20

*Baker v. Union Twp.*,
  587 F. App'x 229 (6th Cir. 2014) .............................................................. 17

*Bauer v. City & Cnty. of Denver*,
  642 F. App'x 920 (10th Cir. 2016) ........................................................... 27

*Bd. of the Cty. Comm'rs v. Brown*,
  520 U.S. 397 (1997) ............................................................................. 26

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) .......................................................................... 7, 8

*Bradley v. Benton*,
  10 F.4th 1232 (11th Cir. 2021) ..................................................... 18, 20, 22

*Brown v. Giles*,
  95 F.4th 436 (6th Cir. 2024) ................................................................. 21

*Brown v. Giles*,
  2023 WL 1765917 (S.D. Ohio Feb. 3, 2023)......................................... 21, 22

*Bryson v. City of Oklahoma City*,
  627 F.3d 784 (10th Cir. 2010)........................................................... 28, 29

*Carney v. City & Cty. of Denver*,
  534 F.3d 1269 (10th Cir. 2008)..................................................... 24, 25, 27

*Carter v. Morris*,
  164 F.3d 215 (4th Cir.1999)....................................................................... 27

*Casey v. City of Fed. Heights*,
  509 F.3d 1278 (10th Cir. 2007)................................................................ 20

*Cavanaugh v. Woods Cross City*,
  625 F.3d 661 (10th Cir. 2010)................................................................. 15

*City of Canton v. Harris*,
  489 U.S. 378 (1989) ........................................................................... 24, 28

*City of Tahlequah v. Bond*,
  595 U.S. 9 (2021) ..................................................................................... 19

*Clark v. Colbert*,
  895 F.3d 1258 (10th Cir. 2018)................................................................. 15

*Connick v. Thompson*,
  563 U.S. 51 (2011) ............................................................................... 23, 28

*Cook v. Riley*,
  2012 WL 2239743 (M.D.N.C. June 15, 2012) ...................................... 18

*Cordova v. Aragon*,
  569 F.3d 1183 (10th Cir. 2009)................................................................. 16

*Coronado v. Olsen*,
  2020 WL 5821220 (D. Utah Sept. 30, 2020)....................................... 13

*D.C. v. Wesby*,
  583 U.S. 48 (2018) .................................................................................... 19

*Davis v. City of Aurora*,
  705 F. Supp. 2d 1243 (D. Colo. 2010).................................................. 14

*Davis v. Scherer*,
  468 U.S. 183 (1984) .................................................................................. 22

*Emmett v. Armstrong*,
  973 F.3d 1127 (10th Cir. 2020)................................................................. 11

*Erickson v. City of Lakewood, Colorado*,
  489 F. Supp. 3d 1192 (D. Colo. 2020) ................................................................. 24

*Est. of Melvin v. City of Colorado Springs*,
  2023 WL 8539921 (10th Cir. Dec. 11, 2023) ..................................................... 15

*Est. of Taylor v. Salt Lake City*,
  16 F.4th 744 (10th Cir. 2021) ................................................................................ 9

*Est. of Waterhouse v. Direzza*,
  129 F.4th 1212 (10th Cir. 2025) ......................................................................... 11

*Estate of Larsen ex. rel. Sturdivan v. Murr*,
  511 F.3d 1255 (10th Cir. 2008) ..................................................................... 13, 16

*Finch v. Rapp*,
  38 F.4th 1234 (10th Cir. 2022) ........................................................................... 26

*Fisher v. City of Las Cruces*,
  584 F.3d 888 (10th Cir. 2009) ............................................................................. 12

*Ford v. West*,
  222 F.3d 767 (10th Cir. 2000) ............................................................................... 8

*Graham v. Connor*,
  490 U.S. 386 (1989) ........................................................... 3, 6, 9, 10, 11, 15, 16

*Harper v. Perkins*,
  459 F. App'x 822 (11th Cir. 2012) ...................................................................... 18

*Harris v. Mahr*,
  838 F. App'x 339 (10th Cir. 2020) ...................................................................... 18

*Heard v. Dulayev*,
  29 F.4th 1195 (10th Cir. 2022) ........................................................................... 19

*Hinton v. City of Elwood*,
  997 F.2d 774 (10th Cir. 1993) ............................................................................. 10

*Illinois v. Wardlow*,
  528 U.S. 119 (2000) ............................................................................................. 10

v

*Jiron v. City of Lakewood*,
  392 F.3d 410 (10th Cir. 2004)............................................................. 16

*Johnson v. Scott*,
  576 F.3d 658 (7th Cir. 2009).............................................................. 11

*Kan. Penn Gaming, LLC v. Collins*,
  656 F.3d 1210 (10th Cir. 2011)............................................................ 7

*Khalik v. United Air Lines*,
  671 F.3d 1188 (10th Cir. 2012)............................................................ 8

*Kisela v. Hughes*,
  138 S. Ct. 1148 (2018) ..................................................................... 18

*Martin v. City of Reading*,
  118 F. Supp. 3d 751 (E.D. Pa. 2015) .......................................... 17, 22

*Martinez v. City & Cnty. of Denver*,
  2013 WL 5366980 (D. Colo. Sept. 25, 2013).................................... 24

*Morris v. Humphrey*,
  59 F. Supp. 3d 1369 (W.D. Okla. 2014) ........................................... 12

*Mullenix v. Luna*,
  577 U.S. 7 (2015)........................................................................ 8, 19

*Negron v. City of New York*,
  976 F. Supp. 2d 360 (E.D.N.Y. 2013) ........................................ 18, 22

*Palacios v. Fortuna*,
  61 F.4th 1248 (10th Cir. 2023) ......................................................... 11

*Pauly v. White*,
  874 F.3d 1197 (10th Cir. 2017)........................................................... 9

*Peabody v. Perry Twp.*,
  2013 WL 1327026 (S.D. Ohio Mar. 29, 2013).................................... 18

*Perea v. Baca*,
  817 F.3d 1198 (10th Cir. 2016)..................................................... 8, 15

*Peroza-Benitez v. Smith*,
994 F.3d 157 (3d Cir. 2021).......................................................................... 18, 21

*Phillips v. James*,
422 F.3d 1075 (10th Cir. 2005).............................................................. 16

*Quinn v. Young*,
780 F.3d 998 (10th Cir. 2015)................................................................. 20

*Reavis v. Frost*,
967 F.3d 978 (10th Cir. 2020)................................................................ 16

*Rehberg v. City of Pueblo*,
2012 WL 1326575 (D. Colo. Apr. 17, 2012)...................................... 29

*Ridge at Red Hawk, L.L.C. v. Schneider*,
493 F.3d 1174 (10th Cir. 2007)................................................................ 7

*Rockwell v. Rawlins*,
2014 WL 5426716 (D. Md. Oct. 23, 2014) ......................................... 17

*Ryder v. City of Topeka*,
814 F.2d 1412 (10th Cir. 1987)............................................................. 16

*Schneider v. City of Grand Junction Police Dep't*,
717 F.3d 760 (10th Cir. 2013)............................................................... 23

*Scott v. Harris*,
550 U.S. 372 (2007) .............................................................................. 13

*Sexton v. City of Colorado Springs*,
530 F. Supp. 3d 1044 (D. Colo. 2021)................................................. 25

*Singleton v. Cunningham*,
2018 WL 5033759 (D. Del. Oct. 17, 2018) ........................................ 12

*Snauer v. City of Springfield*,
2010 WL 4875784 (D. Or. Oct. 1, 2010)....................................... 18, 22

*Surat v. Klamser*,
52 F.4th 1261 (10th Cir. 2022) ............................................................ 21

*Thomson v. Salt Lake Cnty.* ,
584 F.3d 1304 (10th Cir. 2009)........................................................................ 14

*Ullery v. Bradley*,
949 F.3d 1282 (10th Cir. 2020)........................................................................ 21

*Vette v. K-9 Unit Deputy Sanders*,
989 F.3d 1154 (10th Cir. 2021)........................................................................ 9

*Waller v. City & Cnty. of Denver*,
932 F.3d 1277 (10th Cir. 2019).................................................................. 23, 28

*Wilson v. City of Lafayette*,
510 F. Appx 775 (10th Cir. 2013)............................................................... 13, 15

*Wilson v. Wallace*,
2023 WL 6849227 (D. Kan. Oct. 17, 2023) ...................................................... 21

## STATUTES

Colo. Rev. Stat. § 18-9-116.5 (2022)...................................................................... 10

Colo. Rev. Stat. § 18-4-409 (4)(a) (2022)............................................................... 10

## RULES

Fed. R. Civ. P. 8(a)(2) .............................................................................................. 8

Fed. R. Civ. P. 12(b)(6)................................................................................ 2, 3, 7, 8

# STATEMENT OF PRIOR OR RELATED APPEALS

There are no other appeals related to this matter.

## APPELLEE'S STATEMENT OF THE ISSUES FOR REVIEW

Did the district court correctly hold that Officer Comstock did not violate the Fourth Amendment when he made a split-second decision to use his taser to stop a fleeing felony suspect who had, that day, repeatedly fled from and evaded officers, and who was running directly toward a public road?

Did the district court correctly hold that Mr. Root's conclusory allegations, which were supported only by factually dissimilar examples spread out over the last fifteen years, fail to state a plausible municipal liability claim?

## STATEMENT OF THE CASE

**Facts**

On May 16, 2022, Officer Comstock was working as a member of a taskforce dedicated to solving automotive theft crimes. App. Vol. I, at 8 ¶ 1. On that day, the taskforce of thirteen officers had been tracking and following a stolen 2017 Ford Fusion with the goal of catching the driver. *Id.* at 9 ¶¶ 14, 15. To that end, the taskforce tracked the stolen Ford to the Aspen Lodge Hotel and waited for the driver to return to the car. *Id.* With the driver in the car, the team planned to block it in and make an arrest. *Id.* ¶¶ 15, 16. When the driver returned, the taskforce moved in. However, the Ford fled, evading the taskforce and hitting a police cruiser as it escaped. *Id.* Even though the Ford damaged the cruiser, the officers chose not to chase it. *Id.* Instead, they used GPS to track it to the Kum & Go gas station at 2588 Airport Rd. *Id.* at 10 ¶ 17. There, taskforce officers saw Mr. Root get out of the car

and go into the convenience store. *Id.* ¶ 18. While Mr. Root was inside, the taskforce surrounded the building. *Id.* Mr. Root saw the officers waiting for him as he exited the store. *Id.* He immediately began running from them and toward Airport Road. *Id.* ¶ 20. As Mr. Root fled, taskforce member Detective Wolff shot a Bola Wrap at him. *Id.* ¶ 21. However, the Bola Wrap failed to stop Mr. Root. *Id.* Officer Comstock began chasing Mr. Root soon after he started running. *Id.* After Mr. Root successfully evaded the Bola Wrap, and as he approached Airport Road, Officer Comstock deployed his taser once. *Id.* The taser struck Mr. Root in the back and he fell landing in the road, unfortunately breaking his neck. *Id.* ¶ 27-30.

**Procedural History**

Mr. Root filed his amended complaint in this case on May 16, 2024. App. Vol. 1, at 6. In it he alleged that Officer Comstock used excessive force in violation of both state and federal law. *Id.* at 21-27. He also alleged a municipal liability claim against the City of Colorado Springs ("City").[1] *Id.*

On July 29, 2024, City Defendants filed a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6). *Id.* at 33. In their motion, City Defendants argued that the amended complaint failed to state a plausible claim for relief. *Id.* at 33-47. Specifically, City Defendants argued that Officer Comstock was entitled to qualified

---

[1] Throughout this brief, Officer Comstock and the City are collectively referred to as "City Defendants."

immunity because the facts alleged showed that his decision was reasonable under the circumstances. *Id*. at 36-41. City Defendants also argued that Mr. Root could not point to clearly established law that prohibited Officer Comstock from using his taser under the rapidly evolving circumstances that confronted him. *Id*. at 41-42. Finally, City Defendants argued that Mr. Root's claims against the City were entirely conclusory. *Id*. at 43. This is in part because the amended complaint does not point to a single factually similar case that shows a direct causal link between a custom or policy within the City and Mr. Root's injury. *Id*.

On March 3, 2025, the district court granted City Defendants' motion and dismissed all of Mr. Root's claims. *Id*. at 58. In its order, the district court correctly applied the objective reasonableness standard identified in *Graham v. Connor*, 490 U.S. 386, 396 (1989). App. Vol. I, at 63. The court found that under the circumstances, Officer Comstock used a reasonable amount of force to apprehend a fleeing felony suspect, who had already evaded less intrusive arrest attempts, put himself and others in harm's way, and who was actively fleeing towards a public roadway. *Id*. at 63-66. With respect to Mr. Root's arguments that Officer Comstock used deadly force, the district court noted that the amended complaint failed to include any details about the alleged elevated position, including the height and slope of the ground Mr. Root was running over. *Id*. at 65. The district court further noted that Mr. Root's cases concerning elevated positions, were not from this

jurisdiction and were "remarkably dissimilar to the facts" alleged in the amended complaint. *Id*. As such, the district court correctly determined that the facts alleged did not plausibly show that using a taser in this case was likely to cause death. *Id*. The court also found that there was no clearly established law to inform Officer Comstock that using his taser in this situation violated the Fourth Amendment. *Id*. at 66. Therefore, the district court concluded that Officer Comstock was entitled to qualified immunity under either prong of analysis. *Id*.

With respect to Mr. Root's claim against the City, the court concluded that he failed to plausibly show that an illegal custom or policy caused his injury. *Id.* at 67. Specifically, the court noted that Mr. Root's examples of other excessive force allegations contained facts that are too dissimilar to this case to plausibly support a municipal liability claim. *Id*. at 69. As such, the court properly dismissed Mr. Root's claim against the City.

## SUMMARY OF THE ARGUMENT

The district court was right to conclude that under the circumstances alleged it was reasonable for Officer Comstock to deploy his taser as Mr. Root fled. Because Officer Comstock's actions were reasonable and did not violate any clearly established law, the court correctly dismissed Mr. Root's claims.

The district court did not apply a heightened pleading standard in reaching its decision. Rather, it is Mr. Root who is asking this Court to ignore the facts alleged

in his complaint and find the lower court erred. First, Mr. Root overlooks his own allegations that show a reasonable officer would suspect him of at least two felony crimes. Mr. Root was in possession of a stolen vehicle which that day had recklessly hit and damaged a police cruiser while evading capture. The amended complaint also shows that the taskforce made at least three arrest attempts before Officer Comstock used his taser. First, officers tried to block the Ford in and make an arrest at the Aspen Lodge Hotel. App. Vol 1, at 9 ¶¶ 15, 16. Second, officers were waiting to arrest Mr. Root outside of the Kum & Go convenience store. *Id*. ¶ 18. Neither of these attempts involved physical force. *Id*. However, both times the situation was escalated by a fleeing suspect, and, at the Aspen Lodge Hotel, vehicular force against the officers. Third, Mr. Root continued to flee even after Detective Wolff shot a Bola Wrap at him. *Id*. at 10 ¶ 21. Though ineffective, the Bola Wrap plainly demonstrated that officers were willing to use force to make an arrest. Mr. Root's opening brief does not dispute any of the above facts. Instead, he only takes issue with the district court's use of the word "busy" to describe Airport Road. In making this argument, Mr. Root overlooks the fact that Airport Road is a public road, open to any driver with a license, and running headlong into any such road carries a significant risk of injuring Mr. Root, any officer chasing him, and any law-abiding citizen traveling on the road. Mr. Root also ignores the fact that his own complaint demonstrates that Airport Road is busy enough to support businesses that depend on vehicular traffic,

like the Kum & Go gas station. Simply put, the district court did not apply a "heightened" pleading standard. Instead, it applied the facts alleged and correctly concluded that Officer Comstock made a reasonable decision to stop Mr. Root's flight. As such, the court's decision should be upheld.

Ironically, it is Mr. Root who is advocating for a heightened standard. Mr. Root is asking this Court to view his tasing as an act of deadly force. Tellingly, he does not point to a single case where this Court has made a similar finding. Even in taser cases that resulted in the suspect's death, this Court has consistently evaluated the totality of the circumstances and applied the *Graham* factors. Mr. Root's only support for this heightened scrutiny is a conclusory allegation that he was running across an "elevated surface" when he was tased. However, he has not identified a court in this jurisdiction which has defined that phrase. The amended complaint also fails to include basic facts, like the height and pitch of the slope, which could plausibly show a fall would cause substantial injury or death. With the absence of these facts, the use of force should not be analyzed as a deadly force claim.

Mr. Root cannot point to clearly established law that would have informed every reasonable officer that using a taser on a felony suspect fleeing over uneven ground, who had evaded multiple attempts to stop him, and who was running toward a public road, violated the Fourth Amendment. Because Officer Comstock did not violate clearly established law, the district court should be affirmed.

Finally, the district court properly found that Mr. Root's amended complaint failed to plausibly show a City policy that caused his alleged constitutional injury. The court correctly noted that Mr. Root conclusory allegations are supported only by in insufficient number of dissimilar cases scattered over the last fifteen years. As such, Mr. Root has failed to show that a City policy or custom is responsible for his injury, and the district court's decision should be affirmed in its entirety.

## ARGUMENT

### 1.  Standard of Review

The standard of review in this case is de novo. *Ridge at Red Hawk, L.L.C. v. Schneider,* 493 F.3d 1174, 1177 (10th Cir. 2007).

### 1.1. Fed. R. Civ. P. 12(b)(6)

To survive a Rule 12(b)(6) motion to dismiss, the "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "This pleading requirement serves two purposes: to ensure that a defendant is placed on notice of his or her alleged misconduct sufficient to prepare an appropriate defense, and to avoid ginning up the costly machinery associated with our civil discovery regime on the basis of a largely groundless claim." *Kan. Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1215 (10th Cir. 2011). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not

'show[n]'—'that the pleader is entitled to relief.'" *Iqbal*, 556 U.S. at 679 (quoting in part Fed. R. Civ. P. 8(a)(2)). If the facts are well-pled then the court must view them in the light most favorable to the plaintiff. *Ford v. West*, 222 F.3d 767, 771 (10th Cir. 2000). However, "we are not bound to accept as true a legal conclusion couched as a factual allegation." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). "[U]nder Rule 12(b)(6), we will disregard conclusory statements and look only to whether the remaining, factual allegations plausibly suggest the defendant is liable." *Khalik v. United Air Lines*, 671 F.3d 1188, 1191 (10th Cir. 2012).

## 2. Officer Comstock Is Entitled To Qualified Immunity

"When a § 1983 defendant asserts qualified immunity, this affirmative defense "creates a presumption that [the defendant is] immune from suit." *Perea v. Baca*, 817 F.3d 1198, 1202 (10th Cir. 2016). "To overcome this presumption, [Mr. Root] must show that (1) the [officer's] alleged conduct violated a constitutional right, and (2) it was clearly established at the time of the violation, such that 'every reasonable official would have understood,' that such conduct constituted a violation of that right." *Id.* (quoting *Mullenix v. Luna*, 577 U.S. 7, 11 (2015)).

### 2.1. The district court correctly held that Officer Comstock's split-second decision did not violate the Fourth Amendment

"[T]he test of reasonableness under the Fourth Amendment . . . requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the

safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Graham,* 490 U.S. at 396. The "calculus of reasonableness must [also] embody allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." *Est. of Taylor v. Salt Lake City*, 16 F.4th 744, 761 (10th Cir. 2021). "Ultimately the inquiry is always whether, from the perspective of a reasonable officer on the scene, the totality of the circumstances justified the use of force." *Pauly v. White*, 874 F.3d 1197, 1215 (10th Cir. 2017) (internal quotations omitted). Here, applying the *Graham* factors to the alleged facts shows that using a taser to stop Mr. Root's flight was reasonable under the circumstances.

### 2.1.1. Mr. Root does not dispute that he was suspected of serious crimes and that he was actively fleeing from police

Mr. Root's opening brief does not dispute that the first and third *Graham* factors weigh heavily in Officer Comstock's favor. Indeed, the alleged facts show that a reasonable officer would have good cause to suspect Mr. Root of serious felony crimes. App. Vol. I, at 8-10; *see also Vette v. K-9 Unit Deputy Sanders*, 989 F.3d 1154, 1170 (10th Cir. 2021) ("[O]ur binding precedent indicates the first *Graham* factor weighs against the plaintiff when the crime at issue is a felony[.]"). Mr. Root's facts put him in a stolen car that the task force was following and tracking on May 16, 2022. App. Vol. I, at 8-10. When police confronted the driver of that car

at the Aspen Lodge, he resisted arrest by using the stolen Ford to break through their blockade. [2] *Id*. When the taskforce caught up with the Ford and Mr. Root at the Kum & Go, he fled on foot, stopping only when Officer Comstock deployed his taser. *Id*. "Headlong flight -- wherever it occurs -- is the consummate act of evasion[.]" *Illinois v. Wardlow*, 528 U.S. 119, 124 (2000); *see also Hinton v. City of Elwood*, 997 F.2d 774, 781 (10th Cir. 1993) (officer's decision to use a stun gun, without warning, on an actively resisting misdemeanant who did not pose a threat was reasonable).

### 2.1.2. The district court did not apply a "heightened pleading standard" by finding that Mr. Root's recklessness posed a safety risk to others

Mr. Root's only contention with respect to the second *Graham* factor is the district court's use of the word "busy" to describe Airport Road. Op. Br. 24-27. This single complaint overlooks the fact that Airport Road supports enough vehicular traffic to attract a commercial business, like the Kum & Go gas station, that depends on motorists traveling on the adjacent roadway. More importantly, Mr. Root's sole contention fails to address the other facts and law that supports the court's finding.

"The 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of

---

[2] *See* Colo. Rev. Stat. § 18-4-409 (4)(a) (2022) (a person commits the class five felony of Motor Vehicle Theft, if he exercises control over a motor vehicle that belongs to another person without authorization); *see also* Colo. Rev. Stat. § 18-9-116.5 (2022) (a person commits Vehicular Eluding when they drive a motor vehicle in a reckless manner while eluding or attempting to elude a pursuing peace officer).

hindsight." *Graham*, 490 U.S. at 396. "The perspective of the officers is what counts." *Est. of Waterhouse v. Direzza*, 129 F.4th 1212, 1221 (10th Cir. 2025). As a member of the task force that attempted to make an arrest at the Aspen Lodge, Officer Comstock was aware that the Ford not only fled, but that it struck a police cruiser to get away. As the district court correctly noted, "[t]his would have put all officers involved on notice that the suspect presented a credible threat to their safety and that of the public." App. Vol. I, at 64; *see also Emmett v. Armstrong*, 973 F.3d 1127, 1135 (10th Cir. 2020) ("Our review ... looks at the facts and circumstances as they existed at the moment the force was used, while also taking into consideration the events leading up to that moment.").

At the gas station, Officer Comstock observed Mr. Root again take flight after officers surrounded the convenience store and the instant he saw officers. App. Vol. I, at 10 ¶¶ 18-21. Officer Comstock also watched as Mr. Root continued to run after Detective Wolff fired the Bola Wrap at him.[3] *Id*. Based on the day's events, any

---

[3] The district court correctly observed that Detective Wolff's decision to fire the Bola Wrap should have informed Mr. Root that officers were willing to use force to stop his flight. App. Vol. I, at 64. The number of vehicles that officers used at the Aspen Lodge, the fact that officers were undeterred by the Ford's escape from that location, and the fact that the 13-member task force surrounded the Kum and Go while Mr. Root was inside, also should have counseled him against escalating the situation again by fleeing. *Id*. at 9-10. *Palacios v. Fortuna*, 61 F.4th 1248, 1259 (10th Cir. 2023) (finding in part that officer's commands to "drop the gun" were sufficient warning); *see also Johnson v. Scott*, 576 F.3d 658, 661 (7th Cir. 2009) (holding that allowing a police dog to bite a felony suspect who had fled from police was

reasonable officer would have been concerned that Mr. Root, now on foot, might try to steal another car, or endanger innocent citizens in his attempt to escape officers.

The very nature of running unchecked into a public road demonstrates a degree of recklessness that presents an immediate threat to the safety of others. *See Singleton v. Cunningham*, No. CV 17-343 (MN), 2018 WL 5033759, at *5 (D. Del. Oct. 17, 2018) (The lack of traffic did not mitigate the potential danger to officers and motorist caused by a suspect who was tased after he fled across a highway because the roadway was not closed and "one or many cars could appear without notice."); *Morris v. Humphrey*, 59 F. Supp. 3d 1369, 1375 (W.D. Okla. 2014) (officers, responding to a request for a welfare check, were justified in using a taser on a naked man jogging down a highway at 2:00 am even though the man ultimately died as a result of the incident). Here, Officer Comstock had limited options—and faced difficult decisions—as he chased Mr. Root toward Airport Road. *See Fisher v. City of Las Cruces*, 584 F.3d 888, 894 (10th Cir. 2009) ("[T]he Fourth Amendment does not require [police] to use the least intrusive means in the course of a detention, only reasonable ones."). On the one hand, had Officer Comstock stopped or slowed to ensure the road was safe to cross, he would not have lessened the danger of an accident to either Mr. Root or any motorist. Instead, he only would have increased

_____

reasonable, even though no verbal warning was given and questioning whether such a warning would have made a difference).

the likelihood that Mr. Root would stay a step ahead and evade arrest. *See*, *e.g.*, *Scott v. Harris*, 550 U.S. 372, 385 (2007) ("[W]e are loath to lay down a rule requiring the police to allow fleeing suspects to get away whenever they drive so recklessly that they put other people's lives in danger."). On the other hand, choosing to blindly follow Mr. Root into the road would have forced Officer Comstock to risk his own life. "A reasonable officer need not await the glint of steel before taking self-protective action; by then, it is often too late to take safety precautions." *See Wilson v. City of Lafayette*, 510 F. Appx 775, 779 (10th Cir. 2013) (cert. denied) (Gorsuch J.) (quoting *Estate of Larsen ex. rel. Sturdivan v. Murr*, 511 F.3d 1255, 1260 (10th Cir. 2008)). While the outcome was unintended and tragic, Officer Comstock's split-second decision to use his taser was reasonable. *See Coronado v. Olsen*, No. 2:18-CV-83, 2020 WL 5821220, at *6 (D. Utah Sept. 30, 2020), *aff'd*, No. 20-4118, 2022 WL 152124 (10th Cir. Jan. 18, 2022) (finding that officers acted reasonably when they used tasers to stop the advancement of an unarmed and half naked suspect who after being tased, tragically struck his head and suffered a brain injury).

Finally, Mr. Root claims that he was unarmed and did not threaten any officers at the Kum & Go gas station. Op. Br. at 10-11; App. Vol. I, at 11 ¶ 25. This argument ignores the greater context of the officers' contact at the gas station. Indeed, the same Ford Fusion that Mr. Root drove into the Kum & Go, had that day, rammed into another officer's cruiser at the Aspen Lodge while fleeing police. *Id*. at 9 ¶ 16.

Furthermore, his amended complaint does not allege that any officer knew or should have known that he was unarmed and not a threat. If anything, the opposite is true:

> If an officer possesses reasonable suspicion that the detained suspect committed a violent or serious crime -- such as murder, robbery, rape, burglary, assault with a weapon, or various drug offenses -- the officer by definition is dealing with an individual reasonably suspected of committing a crime that involves or is associated with carrying or using a weapon. In such cases, it logically and necessarily follows that the officer may reasonably conclude the suspect may be armed and presently dangerous.

*Davis v. City of Aurora*, 705 F. Supp. 2d 1243, 1259 (D. Colo. 2010) (internal quotations omitted). When viewed from the perspective of a reasonable officer at the scene, Officer Comstock's split-second decision to use his taser did not violate the Fourth Amendment.

### 2.1.3. The district court correctly declined to evaluate this incident as an act of deadly force

In one breath, Mr. Root accuses the district court of applying a heightened pleading standard. In the next, he asks this Court to apply additional scrutiny to Officer Comstock's decision to deploy a taser by arguing it should be analyzed as an act of deadly force. "[T]he mere recognition that a law enforcement tool is dangerous does not suffice as proof that the tool is an instrument of deadly force." *Thomson v. Salt Lake Cnty*., 584 F.3d 1304, 1315-16 (10th Cir. 2009) (internal citations and quotations omitted). Tellingly, Mr. Root has not pointed to a single case where this Court evaluated a taser as an instrument of deadly force. Instead, this

Court has repeatedly stated the opposite. *See Wilson,* 510 F. Appx at 776 (noting that the law, in 2006, did not apply the heightened "deadly force" scrutiny to an officer's decision to tase a fleeing felony suspect, even though one of the taser probes struck the suspect in the head and killed him); *Cavanaugh v. Woods Cross City*, 625 F.3d 661, 665 (10th Cir. 2010) ("Although Tasers may not constitute deadly force . . ."); *Clark v. Colbert*, 895 F.3d 1258, 1263 (10th Cir. 2018) (officers acted reasonably when they "employed lethal force only after the tasers failed"). Even in cases involving a suspect's death, this Court has routinely applied the same *Graham* factors that the district court applied here. *Perea,* 817 F.3d at 1200 (applying the *Graham* factors to excessive force claims where a man died after officers, responding to a call for a welfare check, pushed him off of his bicycle and tased him ten times); *Est. of Melvin v. City of Colorado Springs*, No. 23-1070, 2023 WL 8539921 (10th Cir. Dec. 11, 2023) (analyzing a taser case where the suspect died using the *Graham* factors and not as an act of deadly force); *Aldaba v. Pickens*, 777 F.3d 1148 (10th Cir. 2015) (overturned on other grounds) (applying the *Graham* factors to a claim of excessive force where officers twice tased a disruptive, mentally ill, hospital patient, who died shortly after the encounter).[4] As such, the district court

---

[4] Initially, the Court found that the officers had violated clearly established law. *Id*. However, after receiving direction from the Supreme Court to consider its holding in *Mullenix*, the *Pickens* Court reversed its prior decision finding that the law was

did not err by following this Court's precedent and applying the *Graham* factors, or by finding that those same factors support Officer Comstock's decision to use his taser.

### 2.1.4. Mr. Root has not alleged facts that plausibly show that tasing him was an act of deadly force

The district court also did not err by applying the *Graham* factors because Mr. Root's amended complaint did not contain sufficient facts to plausibly show he was tased on ground that created a substantial risk of death or serious injury. Deadly force is "force that the actor uses with the purpose of causing or that he knows to create a substantial risk of causing death or serious bodily harm. Purposely firing a firearm in the direction of another person ... constitutes deadly force."[5] *Jiron v. City of Lakewood,* 392 F.3d 410, 415 n.2 (10th Cir. 2004). Here, Mr. Root offers no facts

---

not clearly established and the officers were entitled to qualified immunity. *Aldaba v. Pickens*, 844 F.3d 870, 877 (10th Cir. 2016) ("*Pickens II*").

[5] Like *Jiron*, Mr. Root's other deadly force cases involve firearms. *See Est. of Larsen,* 511 F.3d 1255 (officer shot man armed with a knife); *Jiron,* 392 F.3d 410 (officer shot 15-year-old girl armed with a knife); *Cordova v. Aragon*, 569 F.3d 1183 (10th Cir. 2009) (officer shot motorist who attempted to ram a police car and evaded officer's attempts to stop him); *Ryder v. City of Topeka*, 814 F.2d 1412 (10th Cir. 1987) (affirming jury verdict that shooting a 14-year-old robbery suspect was necessary even though the suspect was rendered a quadriplegic); *Phillips v. James*, 422 F.3d 1075 (10th Cir. 2005) (officer shot man armed with a shotgun); *Reavis v. Frost*, 967 F.3d 978 (10th Cir. 2020) (officer shot and killed man, incorrectly suspected of a crime, as the man fled in his vehicle).

that suggest that Officer Comstock knew or should have known that tasing him created a substantial risk of death or serious bodily harm. While Mr. Root claims that he was on an "elevated surface," his amended complaint and opening brief fail to offer any definition or description of that phrase. Furthermore, the amended complaint lacks sufficient facts to show that a reasonable officer would have viewed the ground Mr. Root was running across was precarious enough to be life threatening when combined with a taser. Notably, his amended complaint only claims, in conclusory terms, that he was running down an "elevated slope" between the gas station's parking lot and the sidewalk that bordered Airport Road. App. Vol. I, at 10 ¶ 22. Importantly, his amended complaint does not identify, or even estimate, the height or pitch of the slope at any point. Without providing some indication of the height he was tased at and steepness of the slope he was on, Mr. Root cannot plausibly show that a reasonable officer would have viewed the ground he was running over as an "elevated surface" dangerous enough to be considered deadly. Mr. Root's opening brief supports this very point by relying on out-of-circuit cases where suspects are on surfaces well above the ground, at heights that are specifically stated or easily estimated.[6] Op. Br. 35-38. Because Mr. Root has not plausibly shown

---

[6] *See Martin v. City of Reading*, 118 F. Supp. 3d 751, 756 (E.D. Pa. 2015) (Plaintiff fell 40 feet from an overpass after being tased); *Rockwell v. Rawlins*, No. CIV.A. RDB-13-3049, 2014 WL 5426716 (D. Md. Oct. 23, 2014) (officer tased a minor who was "precariously perched on a second floor ledge"); *Baker v. Union Twp*., 587 F.

that he was tased on a surface that a reasonable officer would have known to be life threatening, the district court correctly declined to evaluate Officer Comstock's decision as an act of deadly force. *Iqbal*, 556 U.S. at 678.

### 2.2. Officer Comstock did not violate clearly established law

"Use of excessive force is an area of the law in which the result depends very much on the facts of each case, and thus police officers are entitled to qualified immunity unless existing precedent squarely governs the specific facts at issue." *Kisela v. Hughes*, 138 S. Ct. 1148, 1153 (2018) (internal quotations omitted). "[C]learly established law must be particularized to the facts of the case, and should not be defined at a high level of generality." *Harris v. Mahr*, 838 F. App'x 339, 342

---

App'x 229 (6th Cir. 2014) (officer tased a misdemeanant, who was not fleeing, at the top of a staircase) (unpublished); *Snauer v. City of Springfield*, No. 09-CV-6277-TC, 2010 WL 4875784 (D. Or. Oct. 1, 2010) (officer tased suspect of a traffic violation who was at the top of 6-7 foot fence); *Harper v. Perkins*, 459 F. App'x 822 (11th Cir. 2012) (unpublished) (officers tased an intoxicated man who was standing in a tree, four feet off the ground); *Negron v. City of New York*, 976 F. Supp. 2d 360 (E.D.N.Y. 2013) (officers tased a naked man who was standing on a small ledge ten feet off the ground). *Cook v. Riley*, No. 1:11CV24, 2012 WL 2239743 (M.D.N.C. June 15, 2012) (officers tased a man who was in a tree stand, 15 feet off the ground). *Bradley v. Benton*, 10 F.4th 1232 (11th Cir. 2021) (officers tased an individual who was on top of an eight-foot wall and "not suspected of committing any particular crime"); *Peroza-Benitez v. Smith*, 994 F.3d 157 (3d Cir. 2021) (officers punched a nearly naked man hanging outside of a second story window until he fell); *Peabody v. Perry Twp.*, No. 2:10-cv-1078, 2013 WL 1327026 (S.D. Ohio Mar. 29, 2013) (officer tased suspect at the top of an eight foot fence, in its holding the court noted, "if the situation were the exact same but [the suspect's] flight from arrest was not over an eight foot fence, no reasonable jury could find that the amount of force used was excessive").

(10th Cir. 2020) (internal quotations omitted). "It is not enough that the rule is suggested by then-existing precedent. The precedent must be clear enough that every reasonable official would interpret it to establish the particular rule the plaintiff seeks to apply." *D.C. v. Wesby*, 583 U.S. 48, 63 (2018). "Accordingly, the plaintiff must 'identify a case where an officer acting under similar circumstances ... was held to have violated the Fourth Amendment.'" *Heard v. Dulayev*, 29 F.4th 1195, 1203 (10th Cir. 2022) (quoting *Wesby*, 583 U.S. at 64). "Such specificity is especially important in the Fourth Amendment context, where it is sometimes difficult for an officer to determine how the relevant legal doctrine, here excessive force, will apply to the factual situation the officer confronts." *City of Tahlequah v. Bond*, 595 U.S. 9, 12-13 (2021) (internal quotations omitted). "Although plaintiffs can overcome a qualified-immunity defense without a favorable case directly on point, 'existing precedent must have placed the statutory or constitutional question beyond debate.'" *Pickens II*, 844 F.3d at 877 (quoting *Mullenix*, 577 U.S. at 12). To show that a law is clearly established, a plaintiff must identify an "on-point Supreme Court or published Tenth Circuit decision that would put all reasonable officials on notice that the conduct at issue violates the Constitution, or [demonstrate] that the clearly established weight of authority from this court's sibling circuits shows the law to be as the plaintiff maintains[.]" *Bailey v. Twomey*, 791 F. App'x 724, 727 (10th Cir. 2019) (internal quotations omitted).

### 2.2.1. Mr. Root fails to point to a case where an officer used excessive force by deploying a taser in a situation like this one

Mr. Root's opening brief does not point to a single Tenth Circuit or Supreme Court holding that clearly establishes that using a taser to stop a fleeing felony suspect who had already evaded less forceful arrest attempts violates the Fourth Amendment. For this reason, Officer Comstock is entitled to qualified immunity. *Id.*

Neither do the facts of this case present an obvious constitutional violation. *See Casey v. City of Fed. Heights*, 509 F.3d 1278 (10th Cir. 2007) (officers tackled and repeatedly tased a man who was attempting to return a court file after inadvertently removing it). Rather, this case demonstrates the unique, tense, and uncertain circumstances that police officers often face when they make split-second decisions like the one Officer Comstock made here, to tase a suspected felon, who had already evaded multiple arrest attempts, as he fled toward a public roadway. In this Court's words, "Plaintiff[] cannot overcome the fact that there are no cases within the relevant temporal period that even slightly resemble these facts. And we know from our precedent that the correspondence must be substantial." *Quinn v. Young*, 780 F.3d 998, 1014 (10th Cir. 2015) (internal quotations omitted).

### 2.2.2. Mr. Root's dissimilar and unpublished cases do not establish a weight of authority

Instead of pointing to an on-point case from this Court or the Supreme Court, Mr. Root attempts to rely on factually distinct cases from other jurisdictions. Notably, only two of his cases are published. *See Bradley*, 10 F.4th at 1223 (officers

tased a man, who fled from a car pulled over for a minor traffic violation, as he

crested an eight foot wall); *Peroza-Benitez*, 994 F.3d at 157 (officers punched a

suspect as he hung from a second story window, causing him to fall from a height of

ten feet and hit his head on some concrete steps, and then tased him while he was

unconscious on the ground). "Two cases from two different circuits falls drastically

short of the weight of authority of six other circuits in consensus." *Wilson v. Wallace*,

No. 23-CV-3030-EFM-TJJ, 2023 WL 6849227, at *9 (D. Kan. Oct. 17, 2023) (citing

*Ullery v. Bradley*, 949 F.3d 1282, 1294 (10th Cir. 2020) (finding that published

opinions from six circuits was sufficient to show a weight of authority)). Mr. Root's

other cases are either district court or unpublished appellate court opinions, which

cannot be used to establish a weight of authority. *See* n.6 supra; *Surat v. Klamser*,

52 F.4th 1261, 1277 (10th Cir. 2022) ("[T]he unpublished cases from this circuit

cannot satisfy the weight of authority approach for demonstrating the law is clearly

established."); *Brown v. Giles,* 95 F.4th 436, 440 (6th Cir. 2024) ("Officers in our

circuit aren't expected to stay abreast of the varying and ever-changing law of other

circuits—especially not unpublished opinions that have no precedential value.").[7]

---

[7] In *Brown*, the Sixth Circuit, found that an officer who tased a fleeing suspect was entitled to qualified immunity, even though the suspect fell, hit his head and suffered an injury after being tased. *Id*. at 439. In its holding, the court noted that "[t]asers typically aren't lethal." *Id* at 440. The district court in *Brown* provided additional facts, noting that the officer tased the suspect, who fled when the officer answered a phone call, without a verbal warning or a command to stop. *Brown v. Giles*, No.

Furthermore, and just as important, none of Mr. Root's cases involve an officer tasing a fleeing felon who is running down an alleged slope of an unknown height, length, and pitch. *See* n.6 supra. In fact, the elevated surface in every one of Mr. Root's cases is physically above the ground, not part of it like the situation here. *Id*. Also, the height of the elevated surface in each of Mr. Root's cases is either plainly stated or easy to estimate. *Id*. Because Mr. Root was not tased on a ledge ten feet off the ground like in *Negron*, 976 F. Supp. 2d 360, a fence six feet high, like in *Snauer,*2010 WL 4875784, an eight foot wall like in *Bradley*, 10 F.4th 1232, or a forty foot overpass like in *Martin,*118 F. Supp. 3d 751, he cannot show that any jurisdiction would conclude that he was tased on an "elevated surface" or that Officer Comstock's use of force was excessive.

Similarly, Mr. Root's conclusory claim that Officer Comstock violated CSPD's taser use policy and training does not help his cause. Op. Br. at 35. First, "[o]fficials sued for constitutional violations do not lose their qualified immunity merely because their conduct violates some statutory or administrative provision." *Davis v. Scherer*, 468 U.S. 183, 194 (1984). Second, Mr. Root's allegation concerning CSPD's taser policy suffers from the same problem as his conclusory

---

1:21-CV-540, 2023 WL 1765917, at *1 (S.D. Ohio Feb. 3, 2023). Furthermore, the suspect claimed to have spent five days in a coma and to have suffered brain damage from the incident. *Id*.

undefined elevated position argument. Specifically, his amended complaint did not allege facts that plausibly show a reasonable police officer would have viewed the ground he was on when tased as elevated or substantially likely to cause injury. App. Vol. I, at 53. As such, Mr. Root's conclusory allegation that Officer Comstock violated CSPD policy is insufficient to overcome his right to qualified immunity.[8]

### 3. Mr. Root's Opening Brief Fails To Show That The District Court Erred By Dismissing His Claim Against The City

"[U]nder § 1983, local governments are responsible only for "their *own* illegal acts." *Connick v. Thompson*, 563 U.S. 51, 60 (2011) (emphasis in opinion). To state a plausible claim against the City, Mr. Root must show that the execution of an illegal City policy inflicted his injury. *Waller v. City & Cnty. of Denver*, 932 F.3d 1277, 1284 (10th Cir. 2019). After establishing the municipal policy, "a plaintiff must demonstrate a direct causal link between the policy or custom and the injury alleged." *Id*. at 1284. "To establish the causation element, the challenged policy or practice must be closely related to the violation of the plaintiff's federally protected right. This requirement is satisfied if the plaintiff shows that the municipality was the moving force behind the injury alleged." *Schneider v. City of Grand Junction*

---

[8] On the last page of his opening brief, Mr. Root claims that that the district court should have given him the opportunity to amend his complaint. Op. Br. at 43. Mr. Root forgets that the operative complaint in this case is an amended complaint. App. Vol. I, at 6-32. He also overlooks the fact that he has made no additional attempts to amend his complaint. *Id*. at 2-5.

*Police Dep't*, 717 F.3d 760, 770 (10th Cir. 2013) (internal citations and quotations omitted). "[A]t the pleading stage, the existence of a *Monell* policy is a 'conclusion' to be built up to, rather than a 'fact' to be baldly asserted." *Erickson v. City of Lakewood, Colorado*, 489 F. Supp. 3d 1192, 1206 (D. Colo. 2020). Mr. Root's opening brief only devotes about two pages to his argument against the City. There he points to the City's official taser use policy which requires officers to use an objectively reasonable amount of force in every situation.[9] Op. Br. at 35; App. Vol. I, at 49. With knowledge of the City's official policy, Mr. Root broadly accuses the City of adopting an unofficial custom that condones all acts of excessive force. Op. Br. 28-29. "A broad contention that Denver's policies encourage the use of excessive force generally is precisely the sort of generalized proof of causation that *Harris* deems insufficient." *Martinez v. City & Cnty. of Denver*, No. 11-CV-00102-MSK-KLM, 2013 WL 5366980, at *15 (D. Colo. Sept. 25, 2013) (citing *City of Canton v. Harris,* 489 U.S. 378, 391-92 (1989)).

### 3.1. Mr. Root has not plausibly established an unofficial custom

"A 'custom' has come to mean an act that, although not formally approved by an appropriate decision maker, has such widespread practice as to have the force of law." *Carney v. City & Cty. of Denver*, 534 F.3d 1269, 1274 (10th Cir. 2008)

---

[9] As noted above, Plaintiff has not alleged sufficient facts to plausibly show he was in an elevated position when Officer Comstock tased him.

(internal quotations omitted). "In attempting to prove the existence of such a "continuing, persistent and widespread" custom, plaintiffs most commonly offer evidence suggesting that similarly situated individuals were mistreated by the municipality in a similar way." *Id.* Here, the district court correctly concluded that Mr. Root's amended complaint failed to make this required showing. Indeed, Mr. Root does not point to other situations where CSPD officers allegedly violated the Fourth Amendment by using a taser to stop a fleeing felony suspect who was running over uneven ground. Instead, he points to nine incidents occurring between 2009 and 2022, where officers allegedly used force under a variety of circumstances. App. Vol. I, at 14-18. Only three of his examples involve an officer tasing a suspect.[10] In the first of those examples, Mr. Root alleges that a person, who was believed to be armed, was tased while standing still and questioning officers. *Id.* at 14 ¶ 37. In his second taser example, he alleges that the suspect fled after being tased, not before like in this case. *Id.* at 15 ¶ 39. Finally, in his third example, which occurred in 2009,

_____

[10] Six of Mr. Root's examples do not involve an officer tasing suspect. Indeed, his first example involves a firearm, not a taser. *Id.* at 13 ¶ 35. It also omits the crimes being investigated. *Id.* Furthermore, he admits the officers first ordered the suspect to stop before shooting. *Id.* Mr. Root's second, sixth, seventh, and eighth examples do not involve a taser or a fleeing suspect. *Id.* at 13, 16, 17 ¶¶ 36, 41-42. In Plaintiff's fourth example, which did not involve a taser or a fleeing suspect, the claims of excessive force were dismissed. *Id.* at 15 ¶ 38; *See Sexton v. City of Colorado Springs*, 530 F. Supp. 3d 1044, 1063 (D. Colo. 2021). In the sixth example, the officers did not tase or chase the suspects. *Id.* at 16 ¶ 40.

Mr. Root claims that a suspect was tased after he was pinned to the ground. *Id*. at 17-18 ¶ 43. Importantly, none of Mr. Root's examples allege that any suspect was tased on an elevated surface or on uneven ground. *Id*. at 14-18. Neither does he claim that any suspect was tased during flight. *Id*. Three factually distinct examples, scattered over the last fifteen years and connected only by an officer's decision to use a taser, does not establish a widespread custom that operates with the force of law in the City. *See Finch v. Rapp*, 38 F.4th 1234, 1245 (10th Cir. 2022) (finding that a handful of alleged constitutional violations that all involved police shootings, but otherwise lacked a common theme or pattern, occurring over a six-year period, were insufficient to show an unofficial custom). As the district court observed, given the size of the City and Mr. Root's timeframe, nine examples, even if they had been similar, would still be insufficient. "Nine is a small numerator over what would be a relatively large denominator—the number of interactions between subjects and police in a city the size of Colorado Springs over fifteen years." App. Vol. I, at 69.

### 3.2. Mr. Root's unrelated examples also fail to demonstrate that a City policy was the moving force behind his injury

"[I]t is not enough for a § 1983 plaintiff merely to identify conduct properly attributable to the municipality. The plaintiff must also demonstrate that, through its deliberate conduct, the municipality was the moving force behind the injury alleged." *Bd. of the Cty. Comm'rs v. Brown*, 520 U.S. 397, 404 (1997) (internal quotations omitted). Here, Mr. Root's inability to point to factually similar excessive

force examples "seriously undermines [his] claim." *Carney*, 534 F.3d at 1274. It also undermines his ability to establish a direct causal link between his injury and a City custom or policy. "[A] plaintiff cannot rely upon scattershot accusations of unrelated constitutional violations to prove either that a municipality was indifferent to the risk of [his] specific injury or that it was the moving force behind [his] deprivation." *Bauer v. City & Cnty. of Denver,* 642 F. App'x 920, 925 (10th Cir. 2016) (quoting *Carter v. Morris*, 164 F.3d 215, 218 (4th Cir.1999)). As the district court noted, none of Mr. Root's examples are sufficiently similar to the facts of this case to show that an unofficial custom was the moving force behind his injury. App. Vol. I, at 70. As such, the court correctly dismissed Mr. Root's claim against the City.

Finally, Mr. Root's opening brief does not argue that the City failed to properly train Officer Comstock or that a City policymaker ratified any unconstitutional conduct.[11] Op. Br. 27-29. However, should this Court consider those theories, the district court's decision should be affirmed.

---

[11] Both of these theories are discussed only in Plaintiff's Statement of the Case, which appears to be a restatement of his amended complaint. *Compare* Op. Br. 7-22 *with* App. Vol. I, 8-21. However, Plaintiff does not discuss either theory in any other section of his opening brief.

### 3.3. The district court correctly concluded that Mr. Root failed to state a plausible failure to train claim

"[T]he City cannot be held liable for its failure to train or supervise its [police officers] unless the City's policymakers can reasonably be said to have been deliberately indifferent to the need for further training or supervision." *Bryson v. City of Oklahoma City*, 627 F.3d 784, 789 (10th Cir. 2010) (internal quotations omitted). "Deliberate indifference is a stringent standard of fault [.]" *Waller,* 932 F.3d at 1284 (quoting *Connick,* 563 U.S. at 61). "[A] pattern of similar constitutional violations by untrained employees is ordinarily necessary: Without notice that a course of training is deficient in a particular respect, decisionmakers can hardly be said to have deliberately chosen a training program that will cause violations of constitutional rights." *Id.* at 1285 (internal quotations omitted). Further, the alleged lack of training must "bear a very close causal connection to the violation of constitutional rights[.]" *Harris*, 489 U.S. at 395 (O'Connor, J., concurring in part).

Here, for the same reasons Mr. Root's widespread custom claim fails, so too does any implied failure to train argument. Mr. Root's examples fail to show that the City was aware of, and deliberately indifferent to, the need for additional taser training with respect to suspects fleeing over uneven ground of an unknown slope. Mr. Root's opening brief acknowledges that Officer Comstock has received taser training and that the City maintains policies with respect to taser use. Op. Br. at 35 ("this guideline is clearly outlined in Appellee Comstock's departmental policy and

training"). Notably, he does not argue that either is deficient. *Id*. As such, any implied failure to train theory should fail and the district court should be affirmed.

### 3.4. The district court correctly held that Mr. Root failed to plausibly assert a municipal liability claim under a ratification theory

"[A] municipality will not be found liable under a ratification theory unless a final decisionmaker ratifies an employee's specific unconstitutional actions, as well as the basis for these actions." *Bryson,* 627 F.3d at 790. Here, none of Mr. Root's examples identify a final policymaker, or claim that any specific person approved any officer's unconstitutional act and the basis for the act. App. Vol. I, at 13-19. Instead, Mr. Root simply claims that the City, CSPD, and the "Chief of Police," ratified dissimilar constitutional violations by failing to investigate, counsel, and discipline an unknown number of unnamed officers. *Id*. at 20-21; 27. Mr. Root's vague and conclusory assertions fail to establish a viable ratification theory, and the district court was correct to dismiss his claims. *See Rehberg v. City of Pueblo*, No. 10-CV-00261-LTB-KLM, 2012 WL 1326575, at *7 (D. Colo. Apr. 17, 2012) (finding in part that a plaintiff could not support a ratification theory by alleging an officer's acts were ratified by the town of Pueblo and the officer's "supervisory officers").

### <u>CONCLUSION</u>

The district court correctly concluded that Officer Comstock is entitled to qualified immunity under either prong of that doctrine's analysis. First, Officer

Comstock's decision to tase Mr. Root was reasonable under the circumstances. Mr. Root was a fleeing felony suspect who had already evaded other arrest attempts, including one where he was suspected of using a stolen car to hit and damage a police cruiser, and who was fleeing toward a public roadway. Second, it was not clearly established that tasing Mr. Root under the above-mentioned circumstances and while he was running down a slope of an unidentified height and pitch violated the Fourth Amendment. As such, Officer Comstock is entitled to qualified immunity. Finally, because Mr. Root has not plausibly shown that a City custom or policy caused his injury, the district court correctly dismissed his municipal liability claim. For these reasons, as well as the reasons stated above and in the district court's order, the lower court should be affirmed and this case dismissed.

Dated this 27th day of May, 2025.

Respectfully submitted,

OFFICE OF THE CITY ATTORNEY FOR THE CITY OF COLORADO SPRINGS
Wynetta P. Massey, City Attorney

 */s/ Brian Stewart*
Brian Stewart, (Digital)
Senior Attorney
Office of the City Attorney
30 South Nevada Avenue, Suite 501
Colorado Springs, Colorado 80903
Telephone:  (719) 385-5909
Facsimile:  (719) 385-5535
bmstewart@springsgov.com
*Attorneys for Defendants-Appellees*

# CERTIFICATE OF COMPLIANCE

1.      This brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 32(a)(7)(A) and (B) because it does not exceed 30 pages, and according to the word processing system used to prepare the brief, it contains 8,268 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(f)

2.      This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Office Word 2010 in Times New Roman 14-point type.

Dated this 27th day of May, 2025.

OFFICE OF THE CITY ATTORNEY FOR
THE CITY OF COLORADO SPRINGS
Wynetta P. Massey, City Attorney

*/s/ Brian Stewart*
Brian Stewart, (Digital)
Senior Attorney
Office of the City Attorney
30 South Nevada Avenue, Suite 501
Colorado Springs, Colorado 80903
Telephone:  (719) 385-5909
Facsimile:  (719) 385-5535
bmstewart@springsgov.com
*Attorneys for Defendants-Appellees*

**CERTIFICATE OF DIGITAL SUBMISSION**

**AND PRIVACY REDACTIONS**

I hereby certify with respect to the foregoing:

1.      All required privacy redactions have been made per 10th Cir. R. 25.5;

2.      If required to file additional hard copies, that the ECF submission is an exact copy of those documents; and

3.      The digital submission has been scanned for viruses with the most recent version of a commercial virus scanning program, CrowdStrike Falcon Platform, sensor version 7.24.19607.0, most recently updated **May 16, 2025**, and according to the program, is free from viruses.

*/s/ Eri Howard*
Eri Howard, (Digital)
Legal Secretary
Office of the City Attorney
30 South Nevada Avenue, Suite 501
Colorado Springs, CO  80903
Telephone:  (719) 385-5909
Facsimile:  (719) 385-5535

## <u>CERTIFICATE OF SERVICE (CM/ECF)</u>

I hereby certify that on the <u>27th</u> day of <u>May</u>, 2025 I electronically filed the foregoing ***APPELLEES' ANSWER BRIEF*** with the Clerk of the Court using the appellate CM/ECF system, which will send notification of such filing to the following:

Harry M. Daniels (daniels@harrymdaniels.com)
Tyler A. Jolly (Tyler@jollylawcolorado.com)
*Attorneys for Plaintiff-Appellant*

*/s/ Eri Howard*
Eri Howard, Legal Secretary