Case No. 25-1123

# UNITED STATES COURT OF APPEALS
# FOR THE TENTH CIRCUIT

Jacob Root
*Plaintiff-Appellant.*
v.
Officer Robert Comstock, et al.
*Defendant-Appellees.*

On Appeal from
The United States District Court
**District of Colorado**
The Honorable
Judge Daniel D. Domenico
District Court Case No.:
1:24-cv-01293-DDD-TPO

REPLY BRIEF OF APPELLANT

Law Offices of Harry M. Daniels, LLC
Harry M. Daniels, Jr.
Georgia Bar 234158
4751 Best Rd. Suite 490
Atlanta, Georgia 30337
Telephone: (678) 664-8529
Facsimile: (800) 867-5248
daniels@harrymdaniels.com

JOLLY LAW, P.L.L.C

Tyler A. Jolly, #52361
9996 W U.S. Highway 50, Unit 1090
Salida, CO 81201
Phone: 719-429-7359
Tyler@jollylawcolorado.com

# TABLE OF CONTENTS

TABLE OF CONTENTS........................................................................................i

TABLE OF AUTHORITIES................................................................................i

ARGUMENT....................................................................................................4

    I.    Shooting Root with a taser while he was in an elevated position constituted an unconstitutional application of excessive force..........................................4

    II.    This Right was "Clearly Established"............................................13

CONCLUSION.................................................................................................17

CERTIFICATE OF COMPLIANCE...................................................................18

CERTIFICATE OF DIGITAL SUBMISSION......................................................19

CERTIFICATE OF SERVICE.............................................................................19

# TABLE OF AUTHORITIES

## CASES

*Anderson v. Blake*, 469 F.3d 910, 914 (10th Cir. 2006) ............................................14

*Baker v. Union Twp.*, 587 F. App'x 229 (6th Cir. 2014)...........................8, 10,12, 16

*Bradley v. Benton*, 10 F.4th 1232, 1237 (11th Cir. 2021) ............................11, 14, 17

*Casey v. City of Federal Heights*, 509 F.3d 1278 (10th Cir. 2007...............13, 14, 16

*Cavanaugh v. Woods Cross City* 625 F.3d 661, 665 (10th Cir. 2010) ..................4, 7

*Cook v. Riley*, No. 11-cv-24, 2012 WL 2239743, at *12
(M.D.N.C. June 15, 2012..................................................................................11

*Gambrel v. Knox County*, 25 F.4th 391, 401 (6th Cir. 2022)................................... 12

*Graham v. Connor*, 490 U.S. 386 (1989)......................................................5, 6, 7, 14

*Gomes v. Wood*, 451 F.3d 1122, 1134 (10th Cir. 2006)............................................14

*Harper v. Perkins*, 459 F. App'x 822 (11th Cir. 2012).........................................11, 17

*Martin v. City of Reading*, 118 F. Supp. 3d 751 (E.D. Pa. 2015)......................8, 9, 16

*Mckenney v. Harrison*, 635 F.3d 354 (8th Cir. 2011).................................................16

*Millsap v. Jefferson Cnty. Sheriff's Dep't*, Civil Action No. 1:20-cv-01143-RBJ *9
(D. Colo. Jul 29, 2021)..................................................................................7

*Negron v. City of New York*, 976 F. Supp. 2d 360, 368 (E.D.N.Y. 2013).................10

*Peabody v. Perry Twp.*, No. 10-cv-1078, 2013 WL 1327026, at *5-7
(S.D. Oh. Mar. 29, 2013)...............................................................................10

*Peroza-Benitez v. Smith*, 994 F.3d 157 (3d Cir. 2021)..........................................8, 16

*Robinette v. Barnes*, 854 F.2d 909, 912 (6th Cir. 1988).............................................12

*Rockwell v. Rawlins*, No. 13-cv-3049, 2014 WL 5426716, at *4
(D. Md. Oct. 23, 2014)..................................................................................10

*Snauer v. City of Springfield*, No. 09-cv-6277, 2010 WL 4875784, at *5 (D. Or.
Oct. 1, 2010).................................................................................................10

*Tennessee v. Garner*, 471 U.S. 1  (1985) .............................................................14, 15

*Vette v. K-9 Unit Deputy Sanders*, 989 F.3d 1154, 1170 (10th Cir. 2021)................5

STATUTES

42 U.S.C. § 1983.................................................................................9, 17

STATEMENT OF PRIOR OR RELATED APPEALS

None.

ARGUMENT

I. Shooting Mr. Root with a taser while he was in an elevated position constituted an unconstitutional application of excessive force

The district court made a reversible legal error by interpreting the facts in the manner most advantageous to the moving party during the motion to dismiss phase. Appellant Root asserted in his Amended Complaint that Appellee Comstock intentionally discharged a taser at him from behind without any prior notice while he was in an elevated position, which caused Mr. Root to be unable to use his hands or arms to brace for his fall.[1] As a result, Mr. Root sustained a broken neck, rendering him a total quadriplegic. App. Vol. I, at 11. The Appellees contend in their Response

---

[1] In *Cavanaugh v. Woods Cross City*, this Court noted that a taser "sends up to 50,000 volts of electricity through a person's body, causing temporary paralysis and excruciating pain," making the "nature and quality of the intrusion into the interests of [the person] protected by the Fourth Amendment . . . quite severe." 625 F.3d 661, 665 (10th Cir. 2010) (quotations omitted).

that Appellee Comstock's application of the taser on Mr. Root did not constitute a constitutional violation.

The Appellees place significant emphasis on the factors outlined in *Graham v. Connor*, 490 U.S. 386 (1989), formulating their argument that Appellee Comstock's conduct was constitutional. Nevertheless, the *Graham* factors examined by the Appellees are not exhaustive as to whether Appellee Comstock's conduct was constitutional. *Graham* mandates an evaluation of all relevant circumstances, including the character of the purported Fourth Amendment violation. Id. at 396. *Graham* "requires careful attention to the facts and circumstances of each particular case: 1). severity of the crime at issue, 2). whether the suspect poses an immediate threat to the safety of the officers or others, and 3). whether he is actively resisting arrest or attempting to evade arrest by flight." *Id*. Appellee Comstock allegedly had knowledge that Mr. Root was suspected auto theft. Auto vehicle theft is a felony in the State of Colorado. *See Vette v. K-9 Unit Deputy Sanders*, 989 F.3d 1154, 1170 (10th Cir. 2021) (explaining that the Tenth Circuit's "binding precedent indicates that the first *Graham* factor weighs against the plaintiff when the crime at issue is a felony, irrespective of whether that felony is violent or nonviolent.") In addition, Mr. Root was attempting to evade arrest by flight. Admittedly, the first and third factors under *Graham* favor Appellee Comstock. However, in analyzing the facts in the light most favor to the Appellant's Amended Complaint, it is essential

to consider the *Graham* factors, particularly in instances involving deadly force, which assess whether the suspect poses an immediate danger to the safety of law enforcement officers or others. The Appellant's Amended Complaint alleges that Mr. Root was unarmed and attempting to flee from Appellee Comstock. In the light most favor to the Amended Complaint, Appellee Comstock could not have reasonably concluded that Mr. Root posed an immediate threat to himself or to the other officers. Further, even if the first and third factors *Graham* favor Appellee Comstock, the ultimate question is "whether the officers' actions are objectively reasonable in light of the facts and circumstances confronting them without regard to their underlying intent or motivation." *Graham*, 490 U.S. at 397 (quotations omitted). It's extremely plausible that a reasonable officer in Appellee Comstock's position would have believed that Mr. Root was attempting to flee the scene, when viewing the facts in the light most favorable to the Appellant. Notably, Mr. Root did not use any physical force against Appellee Comstock or against other officers who were present, Mr. Root did not engage in any combative struggle of any kind or any resistance that would merit deadly force as a means to stop an escape, Mr. Root did pose an immediate threat to the public, nor was Mr. Root armed with a weapon. Therefore, the third *Graham* factor although weighs towards Appellee Comstock, it should be limited because Mr. Root did not physically resist arrest at the time Comstock shot him in the back without warning while he was in an elevated

position. *See Millsap v. Jefferson Cnty. Sheriff's Dep't*, Civil Action No. 1:20-cv-01143-RBJ *9 (D. Colo. Jul 29, 2021). When analyzing these cases, the Court must undertake a "careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake." Graham, 490 U.S. at 396. (quotations omitted). As sated above, this Court noted in *Cavanaugh*, that a taser "sends up to 50,000 volts of electricity through a person's body, causing temporary paralysis and excruciating pain," making the "nature and quality of the intrusion into the interests of [the person] protected by the Fourth Amendment . . . quite severe." at 665. (quotations omitted). The Appellees, along with the district court, paid minimal regard to the purportedly egregious actions of Appellee Comstock—specifically, the deliberate deployment of a taser by Appellee Comstock to shoot Mr. Root in the back, without any prior warnings, while Mr. Root found himself in an elevated position, violating the "well-established" uniform law enforcement procedures the forbid tasering a person in an elevated and the Colorado Springs Police Department's Standard Operating Procedures, the action of Appellee Comstock posed a significant risk of death or serious bodily harm to Mr. Root. As aforementioned, Mr. Root did not exhibit any physical aggression towards Appellee Comstock or the other officers present. Mr. Root did not engage in any form of combative struggle or resistance

that would justify the use of deadly force to prevent his escape. Mr. Root was unarmed, fleeing, and posed no immediate threat to the public.

The Colorado Springs Police Department Standard Operating Procedures-DL-705-01 Conducted Electrical Weapons (CEW)-Section 700 -Force, Detention, and Arrest (Active 5/4/2020) states:

> Absent exigency or supervisor approval, officer or marshal <u>will not deploy CEW when a person is in an elevated position or a location where a fall may cause substantial injury or death</u>. *Id* at 52. (emphasis added)
>
> See Vol. I, at 52

Further, "it is widely known among law enforcement that tasers should not be employed against suspects on elevated surfaces because of the risk of serious injury from a resulting fall." *Baker v. Union Twp.*, 587 F. App'x 229 (6th Cir. 2014) ("It is widely known among law enforcement and was even a subject of [Defendant's] police training that tasers should not be employed against suspects on elevated surfaces because of the risk of serious injury from a resulting fall."). "The fact that the use of a taser – which is ordinarily a non-lethal weapon – may, under certain circumstances, create a risk of serious injury or death that could make the use of the taser under those circumstances constitutionally unreasonable." *Peroza-Benitez v. Smith*, 994 F.3d 157, 168 (3d Cir. 2021) (quoting *Martin v. City of Reading*, 118 F. Supp. 3d 751, 762 n.8 (E.D. Pa. 2015)). The Court should recognize that it is widely acknowledged in law enforcement that using a TASER on an individual at an

elevated position carries a considerable risk of severe injury due to a possible fall. This Court should highlight, that this guideline is clearly outlined in Appellee Comstock's departmental policy and training, which expressly forbids the use of a TASER in these circumstances.

In *Martin v. City of Reading*, police pursued the plaintiff to a highway overpass, from which the plaintiff fell nearly 40 feet onto concrete after being tased by a City of Reading police officer. 118 F. Supp. 3d 751, 756-58 (E.D. Pa. 2015). The plaintiff brought a § 1983 action against the police officer for use of excessive force in violation of his Fourth Amendment rights, alleging that the police officer's deployment of the Taser caused him to fall from the overpass. *Id*. At summary judgment, rather than focusing "on the qualitative characteristics of the particular type of weapon [the police officer] chose to employ," the district court instead considered "whether a reasonable officer would understand that attempting to effect Plaintiff's arrest by using force that carried with it a risk of serious injury or death violated Plaintiff's rights." *Id*. at 765-66. Answering in the affirmative, the district court – viewing the facts in the light most favorable to the plaintiff as the non-moving party – denied the police officer summary judgment on the grounds of qualified immunity. In support of its finding, the court in *Martin* cited a number of similar excessive force cases where courts have denied (or affirmed the denial of) a defendant's motion for summary judgment on the grounds of qualified immunity

based on the following fact pattern: Police tased an individual who is positioned on an elevated surface at a height that carries with it a risk of serious injury or death, causing the individual to fall. *Id*. at 766-67; accord *Baker* at. 234 ("It is widely known among law enforcement and was even a subject of [the officer's] police training that tasers should not be employed against suspects on elevated surfaces because of the risk of serious injury from a resulting fall."); *Negron v. City of New York*, 976 F. Supp. 2d 360, 368, 371 (E.D.N.Y. 2013) (noting that "[the officers] should have known" that tasing the plaintiff – who was "standing on a small, unenclosed ledge ten feet off the ground" – "was unreasonable even despite the lack of precedent involving tasers used under similar circumstances"); *Rockwell v. Rawlins*, No. 13-cv-3049, 2014 WL 5426716, at *4 (D. Md. Oct. 23, 2014) ("While tasers may not constitute deadly force in some scenarios, deadly force was clearly used in this case. [The plaintiff] was standing on a narrow second-story ledge/roof, and there is no evidence to suggest that a reasonable police officer would not have expected [the plaintiff] to fall if he was tased.") (footnote omitted); *Peabody v. Perry Twp*., No. 10-cv-1078, 2013 WL 1327026, at *5-7 (S.D. Oh. Mar. 29, 2013) (noting that a reasonable jury could determine that the deployment of a taser against an individual climbing an eight-foot fence could constitute deadly or lethal force); *Snauer v. City of Springfield*, No. 09-cv-6277, 2010 WL 4875784, at *5 (D. Or. Oct. 1, 2010), report and recommendation adopted by district judge 2010 WL 4861135 (D. Or.

Nov. 23, 2010) ("[The officer] was trained in the use of a taser and knew well that a tasered suspect becomes temporarily paralyzed. ... It does not take a panel of judges to alert a reasonable police officer that causing a [temporarily] paralyzed man to tumble headfirst onto the ground from a platform six to seven feet above the ground creates a substantial risk of causing death or serious bodily injury.") (citation and internal quotations omitted); *Harper v. Perkins*, 459 F. App'x 822, 827-28 (11th Cir. 2012) (affirming district court's denial of defendant's motion to dismiss on the grounds of qualified immunity because inter alia the defendant's force "was obviously and clearly excessive," particularly given that "a taser was used on a person standing with his hands in the air at least four feet off the ground in a tree"); *Cook v. Riley*, No. 11-cv-24, 2012 WL 2239743, at *12 (M.D.N.C. June 15, 2012) (recommending denial of summary judgment on the grounds of qualified immunity in part because "[the plaintiff] was perched on a small platform 15 feet in the air at the time of the TASER deployment [and a] fact finder could conclude that a reasonable officer would foresee that utilizing a TASER under such circumstances could cause the targeted individual to fall and thereby to suffer serious harm ....") (internal citations omitted).

In *Bradley v. Benton*, 10 F.4th 1232, 1237 (11th Cir. 2021), Officer Benton testified that he was aware of and understood police department policy that a taser "will cause most everyone to fall and therefore should not be used when the risk of

falling would likely result in death[.]" *Id.* He also agreed that under that policy it was "not appropriate" to use a taser "if someone is at an elevated height[.]" *Id*. Tracy Rucker, the master instructor on taser use for DeKalb County, testified that a person who is tased will experience "neuromuscular incapacitation" and will be paralyzed from pain for around five seconds. *Id*. He also testified that he instructed DeKalb County officers that tasers could be deadly when the target is in a dangerous position such as an elevated height. *Id. And he affirmed that even a fall "from a level that's not that high" can cause serious injury when the victim has been incapacitated by a taser. Id*. A use of force is considered deadly when it poses "a substantial risk of causing death or serious bodily harm." *Robinette v. Barnes*, 854 F.2d 909, 912 (6th Cir. 1988) (quoting Model Penal Code § 3.11(2) (Am. L. Inst., Proposed Official Draft 1962)). Even a normally non-lethal weapon "qualif[ies] as 'deadly force' " under certain circumstances, "especially if an officer hits a suspect in the head." *Gambrel v. Knox County*, 25 F.4th 391, 401 (6th Cir. 2022) (quoting *Robinette*, 854 F.2d at 912) (collecting cases). As sated above, use of a TASER weapon in risky situations may cause significant harm. See, e.g., *Baker* at 234 ("It is widely known among law enforcement . . . that tasers should not be employed against suspects on elevated surfaces because of the risk of serious injury from a resulting fall."). This Court has held that "it is excessive to use a Taser to control a target without having any reason to believe that a lesser amount of force—or a verbal command—could

not exact compliance." *Casey v. City of Fed. Heights*, 509 F.3d 1278, 1286 (10th Cir. 2007). In viewing the allegation in the most favorable light for the Appellant, it would be deemed excessive use of force for an officer to deploy a taser without prior warning in the back of an unarmed individual who is in an elevated position running from law enforcement on foot, particularly when that individual is not exhibiting any physical hostility towards law enforcement, participating in any form of combative resistance, nor posing an immediate danger to the public that would justify the use of lethal force to prevent his escape. Therefore, when evaluating the Appellant's Amended Complaint in the most favorable manner for the Appellant, it is more than plausible that Appellee Comstock violated Mr. Root's Fourth Amendment right to be free from an unreasonable seizure.

II.     This Right was "Clearly Established"

In order to hold an officer liable, the Appellant must also show the law was clearly established. This right appears to be clearly established such that Appellee Comstock had no legitimate justification for intentionally shooting an unarmed Root in the back without prior warning and while Root was in an elevated position.  As alleged, Appellee Comstock 's conduct was sufficiently egregious and that the lack of perfectly analogous taser cases at the time of incident should not shield Appellee Comstock from suit. This Court has held that "we cannot find qualified immunity wherever we have a new fact pattern." *Casey*, 509 F.3d at

1284. The Supreme Court has "shifted the qualified immunity analysis from a scavenger hunt for prior cases with precisely the same facts toward the more relevant inquiry of whether the law put officials on fair notice that the described conduct was unconstitutional." *Gomes v. Wood*, 451 F.3d 1122, 1134 (10th Cir. 2006) (quotation omitted). "[A] general constitutional rule that has already been established can apply with obvious clarity to the specific conduct in question, even though [such conduct] has not previously been held unlawful." *Anderson v. Blake*, 469 F.3d 910, 914 (10th Cir. 2006) (quotation and alteration omitted). "The more obviously egregious the conduct in light of prevailing constitutional principles, the less specificity is required from prior case law to clearly establish the violation." *Pierce v. Gilchrist*, 359 F.3d 1279, 1298 (10th Cir. 2004). If a jury were to conclude that Comstock intentionally shot an unarmed Root in the back without prior warning and while Root was in an elevated position, his conduct would be egregious. And, this Court have said, "an officer's violation of the *Graham* reasonableness test is a violation of clearly established law if there are no substantial grounds for a reasonable officer to conclude that there was legitimate justification for acting as she did." *Casey*, 509 F.3d at 1286 (quotation omitted). As in *Benton*, this Court should find that the allegation in the Appellant's Amended Complaint is a materially similar to *Tennessee v. Garner*, 471 U.S. 1, (1985), as did the Eleventh Circuit concluded in *Benton*. In *Benton*, the court held the following:

The Supreme Court has held that the existence of materially similar caselaw is "especially important in the Fourth Amendment context to defeat a qualified immunity defense without a materially similar precedent on point, a Fourth Amendment plaintiff must show that an officer's "conduct lies so obviously at the very core of what the Fourth Amendment prohibits that the unlawfulness of the conduct was readily apparent to the official." She "must show that the official's conduct 'was so far beyond the hazy border between excessive and acceptable force that [the official] had to know he was violating the Constitution even without caselaw on point.

This case passes both tests: the right in question was clearly established by a materially similar precedent and was obviously clear in any event.

First, there is a materially similar precedent: *Tennessee v. Garner*, 471 U.S. 1, 105 S.Ct. 1694, 85 L.Ed.2d 1 (1985). There, the Supreme Court held that a police officer used excessive force when he shot an unarmed burglary suspect to stop him from fleeing on foot. The Supreme Court has cautioned us against relying on the holding of *Garner* to the extent that holding is "cast at a high level of generality." But we are concerned with *Garner*'s analogous facts, not *Garner*'s high-level holding. *Garner* clearly established that an officer cannot use deadly force to stop an unarmed man who is not suspected of committing a violent crime from fleeing on foot. That is precisely what happened in *Garner* and that is precisely what happened in this case. Accordingly, *Garner* put Officer Benton on notice that he could not use deadly force to stop Robinson from running away on foot.

To be sure, there is one factual distinction between this case and *Garner*. In *Garner*, the officer shot the suspect with a gun. Here, Officer Benton shot Robinson with a taser. But that is a distinction without a difference. As explained above, taking the facts in the light most favorable to Robinson, Benton used deadly force when he shot Robinson off the eight-foot wall with a taser. That is, he used force that he knew would "create a substantial risk of causing death or serious bodily harm." He used this level of force to stop an unarmed man who was not suspected of committing a violent crime from fleeing on foot. *Garner* establishes that this level of force is excessive in that circumstance.(*Internal citation omitted*)

15

The Appellees, along with the district court makes much of the fact that the Appellants failed to cite a taser case that holds this particular use of a taser constitute excessive force. Notably, this Court did not cite to any case holding the use of a taser excessive when it denied qualified immunity to one of the defendants in *Casey*; the best this Court could say was that no circuit had *upheld* the use of a taser in those circumstances. *Casey*, 509 F.3d at 1286. Notably, the United States Court of Appeals for the Sixth Circuit held in *Baker*, it is widely known among law enforcement and was even a subject of police training that tasers should not be employed against suspects on elevated surfaces because of the risk of serious injury from a resulting fall. The United States Court of Appeals for the Third Circuit held, in support of its finding, the court in *Martin* cited a number of similar excessive force cases where courts have denied (or affirmed the denial of) a defendant's motion for summary judgment on the grounds of qualified immunity based on the following fact pattern: Police tase an individual who is positioned on an elevated surface at a height that carries with it a risk of serious injury or death, causing the individual to fall. *Peroza-Benitez,* F.3d 157, 168. The United States Court of Appeals for the Eighth Circuit upheld the qualified immunity of an officer, as the evidence indicated that she did not deploy a taser on a suspect who was in an elevated position. *See Mckenney v. Harrison*, 635 F.3d 354 (8th Cir. 2011). Finally, the United States Court

16

of Appeals for the Eleventh Circuit has held in *Harper*, the right was clearly established that tasering a person in an elevated position is a violation of the Fourth Amendment. The same circuit also held in *Benton*, we join many other courts that have recognized that tasing a person who is at an elevated height may come with a substantial risk of serious bodily harm or death. *See Benton* at 1241.

## CONCLUSION

The outrageous conduct of Appellee Comstock, coupled with the absence of any reasonable or legitimate justification for the application of excessive force, and the lack of a directly comparable taser case, does not preclude Mr. Root's § 1983 claim regarding excessive force at the Motion to Dismiss phase. Therefore, the district court made an error in granting Appellee Comstock qualified immunity at this juncture. In light of the aforementioned reasons and those articulated in the Appellants' opening brief, the order issued by the district court that granted qualified immunity to Appellee Comstock and granted the City of Colorado Springs' motion to dismiss the Appellant's Amended Complaint ought to be reversed and remanded to the district court for further consideration.

Respectfully submitted this 4th day of June 2025.

Law Offices of Harry M. Daniels, LLC  
Harry M. Daniels, Jr.  
Georgia Bar 234158  
4751 Best Rd. Suite 490  
Atlanta, Georgia 30337  
Telephone: (678) 664-8529  
Facsimile: (800) 867-5248  
daniels@harrymdaniels.com  

JOLLY LAW, P.L.L.C  

Tyler A. Jolly, #52361  
9996 W U.S. Highway 50, Unit 1090  
Salida, CO 81201  
Phone: 719-429-7359  
Tyler@jollylawcolorado.com

CERTIFICATE OF COMPLIANCE

1. This document complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) and the word limit of Fed. R. App. P. 32(a)(7)(c) because:

   ☒ this document contains 4367 words, and

2. This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because:

   ☒ this document has been prepared in a proportionally spaced typeface using Microsoft Word, Version 2411, in Times New Roman size 14.

/s/Harry M. Daniels, Jr.  
Harry M. Daniels, Jr.  
Georgia Bar 234158

# CERTIFICATE OF DIGITAL SUBMISSION

I hereby certify that with respect to the foregoing Appellants' Opening Brief:

All required privacy redactions have been made per 10th Cir. R. 25.5; if required to file additional hard copies, that the ECF submission is an exact copy of those documents;

The digital submissions have been scanned for viruses with the most recent version of a commercial virus scanning program, {Avast Security, 1Version 1.15 (Revised July 11, 2023)}, and according to the program are free of viruses.

/s/Harry M. Daniels, Jr.
Harry M. Daniels, Jr.
Georgia Bar 234158

# CERTIFICATE OF SERVICE

I hereby certify that on June 4, 2025, I electronically filed the foregoing Appellants' Opening Brief using the court's CM/ECF system which will send notification of such filing to all registered counsel of record.

/s/Harry M. Daniels, Jr.
Harry M. Daniels, Jr.
Georgia Bar 234158